**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SOUAIBOU CISSOKO** | **:** | **CIVIL ACTION** |
| | **:** | |
| | **:** | |
| **v.** | **:** | **NO. 25-6892** |
| | **:** | |
| **MCGEE AEGIS SOLUTIONS LLC** | **:** | |
| | **:** | |
| | **:** | |

**<u>MEMORANDUM OPINION</u>**

**Henry, J.**                                                                          **April 21, 2026**

This case is before the Court on Defendant's Unopposed Motion for Approval of Settlement (the "Motion"). *See* ECF No. 13 ("Mot."); ECF No. 14 (Brief in Support of the Motion) ("Brief"). Upon consideration of the Motion, I deny it without prejudice.

## I.    <u>BACKGROUND</u>

Defendant is in the business of operating residential group homes for clients with intellectual and developmental disabilities. *See* ECF No. 1 at ¶ 6. Plaintiff was employed by Defendant from 2023 through July 2025 as a Direct Support Professional and was designated as an independent contractor. *Id.* at ¶¶ 7-8. Plaintiff brought this lawsuit against Defendant on December 8, 2025, alleging that, even though he was designated as an independent contractor, he was statutorily an employee for the purposes of the FLSA and PMWA, and Defendant failed to pay him overtime premium wages as required by those statutes. *Id.* at ¶¶ 11, 15-17. Defendant filed its Answer to the Complaint on January 28, 2026, asserting that Plaintiff was properly classified as an independent contractor, so it did not improperly compensate him. *See* ECF No. 8.

Shortly after commencement of the litigation, the parties began discussing resolution of Plaintiff's claim. Brief at 3. The parties agreed to settle the lawsuit for $15,000, $10,000 of which

1

will be distributed to Plaintiff and $5,000 of which will go to Plaintiff's counsel, Winebrake & Santillo, LLC ("W&S").  Mot. at Ex. A (the "Agreement").

## II.   **THE SETTLEMENT**

In considering whether to approve a proposed FLSA settlement, the Court is tasked with determining whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching."  *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (internal quotations omitted).  Thus, "[i]f the Court determines that the settlement concerns a 'bona fide dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace."  *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016).

### A.  Whether the Settlement Concerns a Bona Fide Dispute

First, I find that the settlement concerns a bona fide dispute between the parties.  "[F]or a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented."  *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016).  Payment for overtime wages falls squarely within the contours of the FLSA.  *See* 29 U.S.C. § 207(a)(1); *Mako v. Anastasia Care Servs., LLC*, No. 19-cv-410, 2020 WL 919731, at *1 (E.D. Pa. Feb. 26, 2020) ("Disagreements over 'hours worked or compensation due' clearly establish a bona fide dispute.").  Further, Defendant disputes facts pertaining to whether Plaintiff was properly classified as an independent contractor and denies that it acted with "reckless disregard of clearly applicable FLSA provisions," *see* Brief at 4, which indicates that it intended to defend against Plaintiffs' claims for overtime.  I thus hold that the settlement concerns a bona fide dispute between the parties.

**B. Whether the Settlement is Fair and Reasonable for the Employee**

Next, I consider whether the settlement is fair and reasonable for Plaintiff. In determining fairness and reasonableness, the Court looks to the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (cleaned up). Because many of the *Girsh* factors pertain to class actions, some of them are not relevant, so I will discuss only those applicable to the single-plaintiff context and exclude the second and sixth factors. *See Howard*, 197 F. Supp. 3d at 777 n.1.

The first factor—the complexity, expense, and likely duration of litigation—weighs in favor of approval of the Agreement. Absent settlement, the next steps in the case would be discovery and dispositive motions as to Plaintiff's status as an independent contractor, the extent of his overtime, the amount of damages, if any, and Defendant's willfulness, which "would require production and detailed analysis . . . of various employment-related records and depositions of current and former employees." *See* Brief at 5-6. I thus hold that analysis of the first *Girsh* factor weighs in approval of the settlement.

The third factor, which looks to the stage of proceedings and the amount of discovery completed, also weighs in favor of approval of the Agreement because the parties have exchanged data and documents, as well as the facts underlying their positions. Brief at 6-7. This weighs in

3

favor of approval of the Agreement because counsel had an "adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001).

As to the fourth through ninth factors, the parties posit—and I agree—that these factors weigh in favor of approving the Agreement. *See* Brief at 6. Specifically, if litigation were to continue, Plaintiff would face the risk of recovering nothing if he does not establish liability and damages. The settlement fund of $15,000 is reasonable in light of those risks. I thus hold that, in considering the *Girsh* factors, the Agreement is fair and reasonable for the employee.

## C. Whether the Agreement Furthers the FLSA's Implementation in the Workplace

The final consideration is whether the Agreement furthers the FLSA's implementation. "Indicia of a compromise which runs counter to the FLSA's purpose of protecting workers include restrictive confidentiality clauses and overly broad release provisions." *Fritz v. Terminite, Inc.*, No. 19-cv-15749, 2020 WL 5015508, at *2 (D.N.J. Aug. 25, 2020). The Agreement here has a release provision, a confidentiality provision, and a future employment provision. I will review each in turn.

### a. The Release Provision

The Agreement contains a release provision, which provides that Plaintiff:

> releases and forever discharges [Defendant and any of its past, present, or future parents, affiliates, subsidiaries, divisions, predecessors, successors, assigns, owners, managers, directors, officers, partners, associates, shareholders, agents, insurers, employees, attorneys, or representatives] from all legal or equitable claims (including, but not limited to, claims for the reimbursement of liquidated damages, interest, penalties, attorney's fees and litigation costs and expenses) arising prior to the date on which the Court enters an order approving the Settlement as fair and reasonable and dismissing the Action with prejudice and either asserted in or reasonably related to the Action, including all such claims for unpaid regular or overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law theory. Plaintiff further agrees to refrain from instituting, prosecuting, filing, processing, or assisting, encouraging, or cooperating with the instituting, prosecuting, filing or processing

of any litigation which in any way relates to or arises out of the claims asserted in
the Action.

*See* Agreement at ¶ 4.  I hold that the release provision here does not frustrate the FLSA's purpose.

"[A] release provision in an FLSA settlement agreement is only acceptable if it unambiguously

covers only wage-and-hour related claims and cannot be read as a waiver of the plaintiff's right to

sue on other grounds related to their employment." *Adams v. Kulicke & Soffa Indus., Inc.*, No. 24-

cv-1679, 2025 WL 1479498, at *4 (E.D. Pa. May 22, 2025).  The release provision in the present

Agreement is sufficiently narrowly tailored such that Plaintiffs are only releasing wage and hour

claims that accrued prior to the entry of this Order.

### b.  *The Confidentiality Provision*

The Agreement also contains a confidentiality provision, which states that:

Plaintiffs and W&S will not make any statements or issue any press release to the media
or press (including social media) addressing the Settlement or the negotiation of this
settlement and will not contact any media representatives.  If contacted by media
representatives, Plaintiff and W&S may state that the Parties amicably resolved the
dispute and may direct the media representative to the public record.

*Id.* at ¶ 5.  Although "[t]here is a strong presumption against confidentiality clauses in FLSA

wage-settlement agreements," "[d]istrict courts within the Third Circuit have occasionally

approved narrowly crafted confidentiality clauses." *Haley v. Bell-Mark Techs., Corp.*, No.

17-cv-1775, 2019 WL 1925116, at *5-6 (M.D. Pa. Apr. 30, 2019).

Courts have held that agreements preventing a party from making statements to the media

or press, when narrowly tailored, do not frustrate the purposes of the FLSA.  *See Alvarez v. BI*

*Inc.*, No. 16-cv-2705, 2020 WL 1694294, at *9 (E.D. Pa. Apr. 6, 2020) (confidentiality clause did

not frustrate the purpose of the FLSA because it only barred Plaintiffs from discussing the

settlement with the media and did not bar them from discussing the lawsuit with employees of

Defendant); *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 659 (E.D. Pa. 2020) ("[A]

5

confidentiality clause limited to prohibiting discussions with the media ordinarily will not frustrate the FLSA."). However, I take pause with the social media aspect of the confidentiality provision, which provides that "Plaintiff and W&S will not make any statements or issue any press release to the media or press *(including social media)* addressing the Settlement or the negotiation of this settlement." Agreement at ¶ 5 (emphasis added).

The issue of whether a provision limiting an employee's ability to discuss an FLSA settlement on social media has not been widely discussed by Courts within the Third Circuit. In *Kutz v. Cargill Cocoa & Chocolate, Inc.*, No. 19-cv-0176, 2019 WL 5457776 (M.D. Pa. Oct. 23, 2019), the District Court for the Middle District of Pennsylvania approved a confidentiality provision on the condition that the plaintiff "may not be prevented from discussing the settlement with Defendant's employees, friends, families, and individuals not affiliated with the media. Such discussion may take place orally, in writing, *or through a social media platform* among the individuals identified herein who, in turn, must keep the terms of the agreement disclosed to them confidential." *Id.* at *9 (emphasis added). Conversely, in *Skaggs v. Gabriel Bros., Inc.*, No. 19-cv-2032, 2021 WL 2184769 (M.D. Pa. May 28, 2021), the District Court for the Middle District of Pennsylvania allowed a confidentiality provision that prohibited the plaintiffs "from disclosing the contents of the settlement agreement to a press release, press inquiry, or website or *public social media posting*." *Id.* at *3 (emphasis added).

New York courts, on the other hand, have discussed the issue more widely, and I look to them for guidance. *See Zorn-Hill v. A2B Taxi LLC*, Nos. 19-cv-1058, 18-cv-11165, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) (gathering cases). While some courts there disallow such restrictions on discussing the settlement on social media, *see, e.g.*, *Burczyk v. Kemper Corp. Servs., Inc.*, No. 15-cv-1483, 2017 WL 11511165, at *1 (E.D.N.Y. Mar. 28, 2017) ("[C]onsidering the commonality of which individuals communicate over the internet, preventing Plaintiffs from

6

posting 'on any social media, website, blog or other form or Internet activity' places a substantial burden on their ability to openly discuss their experience litigating the lawsuit and entering into the Settlement Agreement."), others allow them to stand, *see, e.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (allowing a provision requiring that the plaintiff "will not contact the media or utilize any social media regarding this Settlement or its terms" to remain because "[a]lthough [that] provision does place some limits on Plaintiffs' ability to discuss the settlement, the limit is not absolute").

Courts within the Third Circuit have already approached confidentiality clauses with skepticism. *See Haley*, 2019 WL 1925116, at * 5 ("Compelled silence frustrates implementation of the rights granted by the FLSA and restricts the public's access to and knowledge of the disputed FLSA violation."); *McGee v. Ann's Choice, Inc.*, No. 12-cv-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) ("Courts have rejected as unreasonable confidentiality provisions in FLSA settlement agreements; these court[s] have reasoned that such provisions unreasonably frustrate the implementation of FLSA because they allow employers to silence employees who have vindicated a disputed FLSA right and interfere with Congress's intent to ensure widespread compliance with FLSA."). Indeed, they often cite the plaintiff's ability to still be able to discuss the settlement with friends, families, and other individuals not affiliated with the media as a basis for approving media-centered confidentiality provisions. *See McGee*, 2014 WL 2514582, at *3 ("Importantly, the parties' agreement does not prohibit discussion of the terms of the Settlement Agreement. Plaintiffs are free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media."). Thus, the question that arises is whether a social media post is more like speaking to family and friends or speaking to the press.

I find that a social media post is more like speaking to family and friends, as "individuals regularly use the internet to communicate with friends, colleagues, and family." *Zorn-Hill*, 2020

7

WL 5578357, at *7.  For the purposes, of the FLSA, therefore, a restriction on Plaintiff's ability to discuss the Settlement on social media "is incompatible with the statutory purpose to ensure that workers are aware of their rights," and "restricting Plaintiffs ability to use it places a substantial burden on their ability to openly discuss their experience litigating the lawsuit and entering into the [Proposed Settlement]."  *Id.*  I do recognize, however, that for some individuals, their public social media presence may reach more than just friends and family.  A more appropriate confidentiality provision, therefore, would either strike the language "(including social media)" or otherwise limit the restriction to *public* social media postings.  *See, e.g.*, *Skaggs* 2021 WL 2184769, at *3 (approving a settlement agreement that prohibited the plaintiffs "from disclosing the contents of the settlement agreement to a press release, press inquiry, or website or *public* social media posting.") (emphasis added).

### c.  *The Future Employment Provision*

Finally, the Agreement provides that:

> Plaintiff will not seek future employment with [Defendant and any of its past, present, or future parents, affiliates, subsidiaries, divisions, predecessors, successors, assigns, owners, managers, directors, officers, partners, associates, shareholders, agents, insurers, employees, attorneys, or representatives ("Releasee")] and waives any right or claim to re-employment with Releasee.  If Plaintiff applies for re-employment with Releasee, this Agreement will serve as a valid and non-reviewable basis for Releasee's denial of such application.

*Id.* at ¶ 6.  Although the future employment provision places some restrictions upon Plaintiff, I do not find it so burdensome upon Plaintiff so as to preclude approval of the settlement, especially because Plaintiff is receiving significant consideration in exchange for the release.  *See Redden v. King's Corner Pub, LLC*, No. 16-cv-6152, 2017 WL 4883177, at *3 (E.D. Pa. Oct. 27, 2017) (approving a settlement agreement including a waiver of future employment with the defendants); *Munoz v. Goldberg, Miller & Rubin, P.C.*, No. 21-cv-297, 2021 WL 4902334, at *3 (E.D. Pa. Oct.

21, 2021) (same); *Hernandez v. Earth Care, Inc.*, No. 15-cv-5091, 2016 WL 3981348, at *5 (E.D. Pa. July 25, 2016) (same).

### III.    ATTORNEY'S FEES

The Agreement provides that Plaintiff's counsel, Winebrake & Santillo, will receive $5,000 in attorney's fees and expenses.[1]  29 U.S.C. § 216(b) provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  In FLSA cases, Courts may use either the percentage-of-recovery method or the "lodestar" formula in evaluating the reasonableness of attorney's fees.  *See In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-cv-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014).  The percentage-of-recovery method "allows a district judge to award attorneys' fees as a percentage of the total fund recovered."  *Id.*  The lodestar method, on the other hand, involves "multiplying the number of hours reasonably expended by a reasonable hourly rate."  *Id.*

Here, both methods of calculating attorney's fees indicate that the proposed attorney's fee award is reasonable.  Under the percentage-of-recovery method, the Court considers the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

Here, one individual will benefit from the settlement fund, and he has not objected to any portion of the Agreement.  Plaintiff's counsel has indicated that they "exclusively represent[]

---

[1] The expenses include:  (i) the $405 filing fee and (ii) $91 paid to a process server.  Brief at 9.

plaintiffs in employment rights litigation" and "have served as lead counsel in several appeals that have resulted in precedential opinions in the area of wage and hour law." *See* Brief at Ex. A, ¶¶ 5-6. As to the complexity of the case, as previously noted, the case would likely proceed to dispositive motions or trial absent settlement. Factor five—the risk of nonpayment—also favors approval of attorney's fees because Plaintiff's counsel was working on a contingency fee basis, so non-payment was a risk. *Id.* at ¶ 5. Plaintiff's counsel worked 12.9 hours on this litigation, an amount which I find to be reasonable and which warrants an award of attorney's fees. *Id.* at ¶ 15. And finally, as to awards in other FLSA cases, attorney's fees awards tend to range between 19% to 45% of the total settlement amount. *Keller v. TD Bank, N.A.*, No. 12-cv-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014). The proposed attorney's fees award here, minus expenses, constitutes approximately 30% of the $15,000 settlement amount. That is within the typical range, further favoring approval of the attorney's fees award.

As for the lodestar calculation, Plaintiff's counsel's declaration indicates that the lodestar for their work totals $10,965 for 12.9 hours worked. *See* Brief at Ex. A, ¶ 15. The proposed attorney's fees award is far lower than the lodestar, indicating that the requested fees are appropriate. I therefore approve the award of attorney's fees and associated expenses.

## IV.    CONCLUSION

For the reasons discussed more fully above, the parties' motion is denied without prejudice insofar as it seeks approval of the Settlement Agreement in its current form. The parties must submit a revised settlement agreement consistent with this opinion no later than April 30, 2026, or, in the alternative, a letter advising the Court that they intend to proceed with litigating this action.